UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

MIAMI DIVISION

CASE NO.: 1:16-CV-24097-UU

**THE AFFILIATI NETWORK, INC.**
a Florida corporation,

           Plaintiff/Counter Defendant
    vs.

**JOSEPH WANAMAKER**, individually;
and **FITCREWUSA INC**., a Nevada
corporation

           Defendants/Counter Plaintiffs
_____/

**JOSEPH WANAMAKER**, individually;
and **FITCREWUSA INC.**, a Nevada
corporation

           Third-Party Plaintiffs
    vs.

**SANJAY PALTA** a.k.a. **SONNY PALTA**,

           Third-Party Defendant.
_____/

## DEFENDANTS' RESPONSE TO
## (DE-60) MOTION TO EXCLUDE
## <u>EXPERT OPINIONS OF JONATHAN E. HOCHMAN</u>

Defendants, Counterclaimants and Third-Party Plaintiffs, JOSEPH WANAMAKER and

FITCREWUSA, INC. (collectively "FITCREW"), by and through undersigned counsel, hereby

file this response to Plaintiff's Motion to Exclude Expert Opinions of Jonathan E. Hochman [D.E.

60], and state:

## I.   INTRODUCTION

### A. Nature of the Case

Plaintiff, The Affiliati Network, Inc. ("Affiliati"), filed this action against FITCREW seeking payment for services allegedly rendered under a contract for affiliate marketing services. Affiliati runs Internet and online media marketing campaigns using a shadowy network of affiliates, known as "Publishers," located all over the world who purportedly, *legally*, drive potential buyers to buy products sold by Affiliati's customers. FITCREW responded with a counterclaim against Affilitati and a third-party complaint against Affiliati's owner, Sonny Palta ("Palta"), alleging that Affiliati and Palta essentially perpetrated a scam which flooded FITCREW with fraudulent orders ("traffic"). [D.E. 13, 13-1, and 13-2]. The fraudulent traffic resulted in massive blowback to FITCREW's sales campaign, which resulted in $2,225,554.00 in damages to FITCREW. Specifically, FITCREW's counterclaims and third-party complaint allege that Affiliati, and Palta created false advertising claims related the use of FITCREW's legitimate fitness supplements, making false medical claims to potential customers, creating fraudulent professional athlete endorsements, using fraudulent press releases and the unauthorized use of intellectual property owned by the NFL and ESPN, and illegally using the names and likenesses of Green Bay Packers player, Clay Matthews, and Olympic swimmer, to promoting FITCREW's products on the Internet.  None of these illegal practices or activities were sanctioned by FITCREW.

As a result of Affiliati and Palta's phony and illegal advertising and marketing scam, FITCREW received never-before-experienced blowback, including consumer complaint letters to and from the Florida Department of Agriculture & Consumer Affairs, the Massachusetts Attorney

REINER & REINER, P.A.
ONE DATRAN CENTER ◆ 9100 SOUTH DADELAND BLVD ◆ SUITE 901 ◆ MIAMI ◆ FLORIDA ◆ 33156 ◆ TEL: 305 670-8282 ◆ FAX: 305 670-8989

General's Office, State of California Department of Justice, and the Better Business Bureau. Affiliati and Palta's actions caused massive customer dissatisfaction resulting in cancelled orders, customer refunds, voids in excess of $1.1 million and bank chargebacks in excess of $1.2 million.

**B.     FITCREW's Expert, Jonathan E. Hochman[1]**

FITCREW selected as one of its experts Jonathan E. Hochman, an Internet marketing consultant who is certified in search advertising and web analytics by Google and a *suma cum laude* graduate of Yale University with Bachelor of Science and Master of Science degrees in computer science. With over fifteen years of experience in ecommerce, Mr. Hochman has served as an expert witness in the fields of search engine optimization, online marketing, website development, online reputation management, and online security. His clients include Apple, Fox Television, Williams Sonoma, 1-800-Flowers, U-Haul, and the United States Treasury.

On May 5, 2017, FITCREW produced Mr. Hochman's expert report, which was supplemented on May 16, 2017. Copies of these reports are attached as Exhibits "A" and "B," respectively, to Affiliati and Palta's *Daubert* Motion. [D.E. 60-1 and 60-2]. Drawing on his incomparable ecommerce experience, Mr. Hochman sets forth summaries in his report for each of the topics about which he is likely to testify at trial. Rather than depose Mr. Hochman about the opinions set forth in his report and any testimony he may give in furtherance of those opinions,[2] Affiliati and Palta filed a *Daubert* Motion to exclude Mr. Hochman's testimony. The Motion is

---

[1] In response to Fitcrew's designation of Mr. Hochman as an expert, Affiliati retained Mr. Nate Lind, a managing member of HaloRiver Management Group advertising agency as a rebuttal expert and on May 19, 2017 provided Mr. Lind's report.

[2] On April 27, 2017, Affiliati and Palta noticed Mr. Hochman for deposition on May 17, 2017, his initial report was served on May 5, 2017 but on May 16, 2017 Affiliati and Palta cancelled this deposition without explanation.

REINER & REINER, P.A.
ONE DATRAN CENTER ⬥ 9100 SOUTH DADELAND BLVD ⬥ SUITE 901 ⬥ MIAMI ⬥ FLORIDA ⬥ 33156 ⬥ TEL: 305 670-8282 ⬥ FAX: 305 670-8989

riddled with mischaracterizations of the report and unfounded assumptions about Mr. Hochman's anticipated testimony and further mischaracterizes the factors applicable to this Court's analysis regarding reliability in the context of non-scientific experts. Accordingly, and for reasons more fully set forth below, the Motion must be denied.

## II.   ARGUMENT and INCORPORATED MEMORANDUM OF LAW

### A.   Legal Standard Under *Daubert* Applicable to Non-Scientific Experts

In the 1999 case of *Kumho Tire Company, Ltd. v. Carmichael*, 526 U.S. 137 (1999), the U.S. Supreme Court held that *Daubert's* "**general holding** – setting forth the trial judge's general 'gatekeeping' obligation," applies to nonscientific, as well as scientific, knowledge. *Id*. at 141 (emphasis added). The Court further held that, while a trial court *may* consider one or more of the factors set forth in *Daubert*, "the test of reliability is 'flexible,' and *Daubert's* list of specific factors neither necessarily nor exclusively applies to all experts in every case." *Id*. Further, "The trial court must have the same kind of latitude in deciding *how* to test an expert's reliability, and to decide whether or when special briefing or other proceedings are needed to investigate reliability, as it enjoys when it decided *whether or not* that expert's relevant testimony is reliable." *Id*. at 152. "The admissibility standard for expert testimony is a 'liberal one,' and a 'review of the caselaw after *Daubert* shows that the rejection of expert testimony is the exception rather than the rule." *James v. Robert Bosch Tool Corp.*, 2015 WL 470586, *2 (M.D. Fla. 2015) (quoting *U.S. v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004)).

In cases involving non-scientific experts the relevant reliability concerns may focus upon personal knowledge or experience." *First Term Bank National Association v. Barreto*, 268 F.3d 319 (6th Cir. 2001); *Am. Gen. Life Ins. Co. v. Schoenthal Family,* LLC, 555 F.3d 1331 (11th Cir.

REINER & REINER, P.A.
ONE DATRAN CENTER ◆ 9100 SOUTH DADELAND BLVD ◆ SUITE 901 ◆ MIAMI ◆ FLORIDA ◆ 33156 ◆ TEL: 305 670-8282 ◆ FAX: 305 670-8989

2009); *Maiz v. Virani*, 253 F.3d 641 (11th Cir. 2001). *See also Lorillard Tobacco Co. v. Elston Self Service Wholesale Groceries, Inc.*, 2008 WL 4681913 (E.D. Ill. 2008) (cigarette marketing expert's proffered testimony about customs in the wholesale cigarette marketing industry which stemmed from his personal experience in the industry was sufficiently reliable under *Daubert*); *Estate of Jorge Luis Arroyo, Jr. v. Infinity Indemnity Ins. Co.*, 2016 WL 4506991 (S.D. Fla. 2016) (insurance claim expert's experience in insurance claims handling for over thirty years rendered his opinions sufficiently reliable).

"Ultimately, however, the trial court's gatekeeping role under *Daubert* 'is not intended to supplant the adversary system or the role of the jury.'" *325 Goodrich Ave., LLC v. Southwest Water Co.*, 891 F. Supp. 2d 1364, 1379 (M.D. Ga. 2012) (quoting *Allison v. McGhan*, 184 F.3d 1300, 1311 (11th Cir. 1999)). "Where the basis of expert testimony satisfies Rule 702, '[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking [debatable] but admissible evidence.'" *Id*. (quoting *Daubert v. Merrell Dow Pharmaceuticals, Inc*., 509 U.S. 579, 596 (1993)). See also *Restivo v. Hessemann*, 846 F.3d 547 (2d DCA 2017) (noting that gaps or inconsistencies in the reasoning leading to an expert's opinion go to the weight of the evidence and not to its admissibility).

**B.     Legal Standard Regarding Relevance/Helpfulness**

To be admissible, expert testimony must "assist the trier of fact to understand the evidence or to determine a fact in issue." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 591 (1993). "Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful." *Id*. "Expert testimony is admissible if it concerns matters that are beyond the

REINER & REINER, P.A.
ONE DATRAN CENTER ⬥ 9100 SOUTH DADELAND BLVD ⬥ SUITE 901 ⬥ MIAMI ⬥ FLORIDA ⬥ 33156 ⬥ TEL: 305 670-8282 ⬥ FAX: 305 670-8989

understanding of the average lay person." *United States v. Frazier*, 387 F.3d 1244, 1262 (11th Cir. 2004). Although expert testimony "generally will not help the trier of fact when it offers nothing more than what lawyers for the parties can argue in closing arguments" (*Frazier*, 387 F.3d at 1262– 63), "[a]n opinion is not objectionable just because it embraces an ultimate issue." Fed. R. Evid. 704. Accordingly, an expert may opine as to whether a party acted in compliance with industry standards. *Sec. & Exch. Comm'n v. Bankatlantic Bancorp, Inc.*, 2013 WL 12009694 (S.D. Fla. 2013).

**C.      Mr. Hochman's Opinions Regarding Affiliate Fraud are Both Reliable and Helpful to the Trier of Fact**

Preliminarily, at the beginning of his report, and following a paragraph on his extensive qualifications, Mr. Hochman states he is rendering his opinions "based on [his] experience in the fields of computer science, online marketing, website development and ecommerce." Given that the substance of his opinions in this case are not scientific, it is both appropriate and permissible under the aforementioned case law that his opinions draw from his vast and undisputed experience in ecommerce, including online marketing. Mr. Hochman's general explanation of affiliate fraud and examples thereof stem from his experience on the subject. The report then cites to a blog entry on www.tune.com as an example of such fraud. As anyone with expertise in the field of Internet marketing (specifically mobile app marketing), *including Affiliati*, should know, TUNE is leading mobile marketing solutions provider and its blog is regarded in the industry as a reliable source of information. The author of the particular article cited by Mr. Hochman is the CEO of TUNE. Any issues with the credibility of the blog entry or its author are appropriate matters to address via cross-examination, as are any purported issues with Mr. Hochman's experience in the area of affiliate fraud. But merely citing to an online source (in this case, a well-respected one) to further

REINER & REINER, P.A.
ONE DATRAN CENTER ◆ 9100 SOUTH DADELAND BLVD ◆ SUITE 901 ◆ MIAMI ◆ FLORIDA ◆ 33156 ◆ TEL: 305 670-8282 ◆ FAX: 305 670-8989

bolster an explanation derived from an expert's own professional experience is by no means grounds for excluding that expert's testimony.

Regarding the relevance of the affiliate fraud opinions, whether or not Affiliati and its principal, Palta, are liable for same, in spite of any alleged disclaimers in their agreement with FITCREW, is still at issue in this case, thus any evidence, including expert testimony, in support of FITCREW's allegations of fraud are relevant. The issue of credit card fraud, in particular, is subsumed in the allegations of fraud in paragraphs 10 and 11 of both the Counterclaims and Third-Party Complaint. Further, this issues was heavily vetted by Affiliati and Palta's counsel at the deposition of Joseph Wanamaker, during which Mr. Wanamaker testified that one of the reasons FITCREW had modified its payment terms under the agreement to 30 days was to have sufficient time to analyze the traffic for fraud before payment.

**D.      Mr. Hochman's Opinions on FITCREW's Losses are Reliable, Helpful, and Not Unnecessarily Cumulative.**

Affiliati and Palta argue that Mr. Hochman's opinions on FITCREW's losses from excessive chargebacks are unreliable because Mr. Hochman allegedly fails to provide any peer-reviewed support for his method of calculating damages and allegedly fails to explain why he defined the Affiliati Era as June 2016 through December 2016. First, regarding the Affiliati Era, as Mr. Hochman's reports indicate, his calculations were based on data as provided to him by FITCREW. A review of that data, which is cited to in the report, demonstrates that Mr. Hochman did not pick and choose certain months, but rather, utilized the full range of data that was provided to him by FITCREW. It is perfectly acceptable for an expert to base its opinions on information provided to him by a party and any issues with that information should be attacked via cross-examination. *See, e.g., B-K Cypress Log Homes, Inc. v. Auto-Owners Ins. Co.*, 2012 WL 1933766

REINER & REINER, P.A.
ONE DATRAN CENTER ◆ 9100 SOUTH DADELAND BLVD ◆ SUITE 901 ◆ MIAMI ◆ FLORIDA ◆ 33156 ◆ TEL: 305 670-8282 ◆ FAX: 305 670-8989

(N.D. Fla. 2012) (holding that the assumptions underlying an expert's damages calculation are more appropriately attacked via cross-examination and it is for the jury to weigh the evidence and decide whether these assumptions are true); *Britt Green Trucking, Inc. v. FedEx National, LTL, Inc.*, 2014 WL 2861485 (M.D. Fla. 2014) (denying a motion that sought to exclude plaintiff's expert on grounds the expert's lost profits calculations were based on an improper time period and holding that the time period issue would more appropriately be addressed on summary judgment or as a factual issue for the jury).

Regarding Mr. Hochman's methodology, it is common practice in the Internet marketing industry to compare a new marketing tactic (known as the "test") against an old marketing tactic (known as the "control") to determine the difference between the two (a methodology sometimes referred to as the "A/B" test). This is exactly the methodology that was used by Mr. Hochman in assessing the chargeback damages, which is obvious from his step-by-step explanation of the calculation. Again, a company like Affiliati should and would be familiar with this basic methodology for assessing chargeback losses. But rather than even attempt to challenge this established methodology on the merits, Affiliati opted to cancel the deposition of Mr. Hochman and attack its perceived conception of what Mr. Hochman's testimony will (or will not) be with a conclusory Motion devoid of any meritorious challenges to the substance of Mr. Hochman's report.

Lastly, Affiliati and Palta argue the opinions regarding chargeback losses are cumulative of the opinions expressed by FITCREW's damages expert, Vanita Spaulding. Preliminarily, this argument is premature since Affiliati and Palta have also moved to strike Ms. Spaulding as an expert and, in the event she is stricken, and Mr. Hochman is not, his testimony on damages should

REINER & REINER, P.A.
ONE DATRAN CENTER • 9100 SOUTH DADELAND BLVD • SUITE 901 • MIAMI • FLORIDA • 33156 • TEL: 305 670-8282 • FAX: 305 670-8989

be permitted. Second, the opinions are not identical as Mr. Hochman utilized a shorter date range based on the data that was provided to him. Lastly, the opinion is useful to decrease the potential for error, if any, in Ms. Spaulding's opinions. For the reasons, Mr. Hochman's testimony on chargeback losses need not be stricken.

**E.      Mr. Hohcman's Opinion on the Delay in Identifying Affiliate Fraud is both Helpful and Necessary to the Trier of Fact**

Contrary to Affiliati and Palta's assertion, the average lay person does not typically possess common knowledge regarding the process by which websites process payments, how such data is gathered in ecommerce systems, and how long it may take for an ecommerce merchant, such as FITCREW, to observe trends in such data. Consequently, Mr. Hochman's opinions on these subjects are not only helpful, but necessary, in order for the trier of fact to understand any perceived delays in FITCREW's ability to timely identify affiliate fraud. Further, the fact that payment card fraud was not readily detected at the time of sale does not mean that no such fraud ever occurred. As Mr. Hochman explains in his report, "[o]nly when chargebacks and complaints started to accumulate could FitcrewUSA identify a pattern of fraud." Whether, in the opinion of Affiliati and Palta, FITCREW could and should have discovered any such fraud, or whether such fraud even occurred, are questions for the jury.

**F.      Mr. Hochman's Opinions of Damages to FITCREW's Reputation is Reliable and Helpful to the Trier of Fact**

Affiliati and Palta's attacks on the reliability of Mr. Hochman's damages to reputation opinions are without merit. Although conveniently ignored by Affiliati and Palta in their Motion, the first source of reputation damage cited to by Mr. Hochman is the Better Business Bureau – an organization dedicated to providing information about a business and assisting to resolve consumer

complaints that is respected in many industries, including, as Mr. Hochman will proffer, the Internet marketing industry. The Motion does not seem to take issue with, or even address, these reviews in their Motion and thus, Mr. Hochman's opinions as derived from the reviews on this website should not be stricken. Regarding the ReportScam.com reviews, as Mr. Hochman will further proffer, it is commonly understood in the field of online reputation management with which he has experience) that any web page appearing on the first page of a popular search engine, such as Google, will impact a business' reputation. The ReportScam site, with its negative reviews, is sometimes the first result shown on Goofle when a user searches for "FitcrewUSA;" whether these reviews are false or even fake does not take away from the fact that they exist and are harmful to FITCREW's reputation.

Regarding causation, as Mr. Hochman will further testify, a temporal relationship between a marketing activity and reviews received is commonly understood in his industry to be a cause and effect. In this case, FITCREW's online marketing activity was for a time almost exclusively via Affiliati. When there are no other online channels as confounding factors, it is reasonable to conclude that the primary, or even exclusive, source of online exposure is related to the negative reviews received.

**G.** **Mr. Hochman's Opinions Regarding Affiliati's Duties are Reliable and Do Not Constitute Inadmissible Legal Opinions.**

Preliminarily, and contrary to Affiliati's assertions, Mr. Hochman's opinions regarding Affiliati's duties do not interpret or in any way reference Affiliati's agreement with FITCREW. Instead, and, again, drawing on his years of experience in the industry, Mr. Hochman describes the general function and duties of Affiliati as an affiliate marketer. Specifically, Mr. Hochman opines are to what is expected by affiliate marketers, and what would be considered good business

REINER & REINER, P.A.
ONE DATRAN CENTER ◆ 9100 SOUTH DADELAND BLVD ◆ SUITE 901 ◆ MIAMI ◆ FLORIDA ◆ 33156 ◆ TEL: 305 670-8282 ◆ FAX: 305 670-8989

practice, as well as ethical, moral, cooperative behavior by an affiliate marketer. These opinions are based on Mr. Hochman's fifteen plus years of experience as an Internet marketer and performance marketer. As previously noted, an expert may opine as to whether a party acted in compliance with industry standards. *Sec. & Exch. Comm'n v. Bankatlantic Bancorp, Inc.*, 2013 WL 12009694 (S.D. Fla. 2013).

**H.     Mr. Hochman's Opinions Regarding Adobe PDF**

FITCREW acknowledges that Naud conceded to electronically signing the Agreement using Adobe Sign,[3] and thus any expert testimony about how Adobe Sign works are no longer relevant to this issue. FITCREW, however, reserves the right to proffer Mr. Hochman's expert opinions on how Adobe PDF works, if necessary, for purposes of rebuttal. Contrary to Affiliati and Palta's position, FITCREW does not believe the average lay person, particularly one who does not have an office job, understands what Adobe PDF is, whether such documents are editable, and how annotations, signatures and meta data on such documents work.

**I.     Mr. Hochman's Opinions in the Insertion Order are Reliable Based on His Experience in the Industry**

Mr. Hochman's opinions regarding whether certain terms in the Insertion Order are ordinary within the industry is based on his fifteen years' experience, an appropriate basis for reliability under the aforementioned case law. As Mr. Hochman will further proffer, he has managed several million dollars per year of online advertising (exceeding approximately $25,000,000 over the course of his fifteen-year career) and served as an expert witness in numerous online marketing cases and has never come across a personal guarantee. The appropriate method

---

[3] This acknowledgement is not in any way an acknowledgment or admission as to Naud's authority to sign.

REINER & REINER, P.A.
ONE DATRAN CENTER ⬥ 9100 SOUTH DADELAND BLVD ⬥ SUITE 901 ⬥ MIAMI ⬥ FLORIDA ⬥ 33156 ⬥ TEL: 305 670-8282 ⬥ FAX: 305 670-8989

of challenging this opinion is with any evidence Affiliati or Palta, or its own expert, may have to the contrary.

**J.      Mr. Hochman's Opinions on the Operations of FITCREW**

Mr. Hochman's opinions regarding FITCREW's operations were initially provided because Affiliati had disputed certain facts related to chargeback processing by pointing out discrepancies between Midigator, FITCREW's chargeback mitigation company, and Konnectiv, a competing mitigation company. Affiliati's own expert has since acknowledged, in his own report, that Midigator is the best source of chargeback data. To the extent Affiliati continues to dispute Midigator's data as compared to Konnectiv's, Mr. Hochman's opinions on these matters continue to be relevant and necessary.

## III.   CONCLUSION

As demonstrated by this Response, Affiliati and Palta's Motion is nothing more than an attempt to make up for their own failure to cross-examine or otherwise confront FITCREW's expert, Mr. Hochman, on his opinions. Mr. Hochman's undeniable qualifications and experience in the field of ecommerce and online marketing in particular render his opinions accurate and reliable. This Court should not exercise the extreme remedy of striking an expert's entire testimony based upon Plaintiffs' conclusory assumptions about that testimony. Accordingly, the *Daubert* Motion to Strike Mr. Hochman's testimony should be denied.

REINER & REINER, P.A.
ONE DATRAN CENTER ◆ 9100 SOUTH DADELAND BLVD ◆ SUITE 901 ◆ MIAMI ◆ FLORIDA ◆ 33156 ◆ TEL: 305 670-8282 ◆ FAX: 305 670-8989

Respectfully submitted,

REINER & REINER, P.A.
*Attorneys for Defendants / Third-Party Plaintiffs*
9100 South Dadeland Boulevard, Suite 901
Miami, Florida   33156-7815
Phone: (305) 670-8282; Facsimile: (305) 670-8989
e-mail: dpr@reinerslaw.com

JACQUES CHEN, ESQ
*Attorneys for Defendants / Third-Party Plaintiffs*
2029 Century Park East, Suite 400
Los Angeles, CA 90067  (310) 201-4382
e-mail: jchen028@gmail.com

/s/ **JACQUES CHEN**
By: _____
**JACQUES CHEN, ESQ.**; CA Bar No: 113399

REINER & REINER, P.A.
ONE DATRAN CENTER ⬧ 9100 SOUTH DADELAND BLVD ⬧ SUITE 901 ⬧ MIAMI ⬧ FLORIDA ⬧ 33156 ⬧ TEL: 305 670-8282 ⬧ FAX: 305 670-8989

## CERTIFICATE OF SERVICE

   *I HEREBY CERTIFY that on June 23, 2017, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.*

REINER & REINER, P.A.
9100 So. Dadeland Blvd., Suite 901
Miami, Florida 33156-7815
Tel: (305) 670-8282;
Fax: (305) 670-8989
dpr@reinerslaw.com;
eservice@reinerslaw.com

   /s/ **DAVID P. REINER, II**
By:_____
**DAVID P. REINER, II**; Fla. Bar No. 416400

REINER & REINER, P.A.
ONE DATRAN CENTER ⬧ 9100 SOUTH DADELAND BLVD ⬧ SUITE 901 ⬧ MIAMI ⬧ FLORIDA ⬧ 33156 ⬧ TEL: 305 670-8282 ⬧ FAX: 305 670-8989