**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No.: 1:16-cv-24097-UU

THE AFFILIATI NETWORK, INC.,

       Plaintiff/Counter-Defendant,

v.

JOSEPH WANAMAKER and FITCREWUSA,
INC.,

       Defendants/Counter-Plaintiffs.
_____/

JOSEPH WANAMAKER and FITCREWUSA,
INC.,

       Third-Party Plaintiffs,

v.

SANJAY PALTA a/k/a SONNY PALTA,

       Third-Party Defendant.
_____/

**ORDER ON *DAUBERT* MOTION**

THIS CAUSE is before the Court upon Plaintiff's/Counter-Defendant's and Third-Party Defendant's *Daubert* Motion to Exclude Expert Opinions of Jonathan E. Hochman, D.E. 60.

THE COURT has considered the Motion and the pertinent portions of the record, and is otherwise fully advised in the premises. For reasons set forth below, the Motion is GRANTED.

**I.**    **Background**

This case arises from a business dispute between: (1) Plaintiff/Counter-Defendant, The Affiliati Network, Inc. ("AFI") and AFI's principal and owner, Third-Party Defendant, Sanjay Palta ("Palta"); and (2) Defendants/Counter-Plaintiffs, FitCrew, USA, Inc. ("FUSA") and

1

FUSA's president, Joseph Wanamaker ("Wanamaker"). AFI is a Florida corporation engaged in the business of Internet-based affiliate marketing, through which AFI produced advertisements for clients through AFI's network of affiliates' and publishers' websites, search engines, social media websites, and direct emailing distributions. D.E. 1 ¶ 1; D.E. 13 ¶ 1. FUSA is a Nevada corporation in the business of selling fitness supplements. D.E. 1 ¶ 3; D.E. 13 ¶ 3. Sometime between April 2016 and June 2016, AFI and Palta began a business arrangement with FUSA and Wanamaker, whereby AFI, Palta and their agents or subcontractors advertised FUSA's fitness supplements through various third-party websites. D.E. 1 ¶ 9; D.E. 13-1 ¶ 6; D.E. 1-1.

On one hand, AFI and Palta contend that FUSA and Wanamaker breached an executed agreement, the Affiliati Network Advertiser Insertion Order ("I/O"), as amended by the Affiliati Network Advertiser Terms and Conditions (the "Terms and Conditions"), by failing to pay $1,400,766.00 in invoices owed to AFI. On the other hand, FUSA and Wanamaker contend that AFI and Palta, or their agents or subcontractors, intentionally engaged in deceptive advertising and removed disclosures concerning FUSA's products during the sales process, thereby resulting in an abnormally large number of cancelled orders, causing FUSA to suffer damages of at least $3,500,000.

On September 23, 2016, based on this underlying conduct, AFI filed its Complaint, alleging the following claims: (1) breach of contract against Wanamaker (Count I); (2) breach of guaranty against FUSA (Count II); and (3) unjust enrichment against Wanamaker and FUSA (Count III). D.E. 1. On October 19, 2016, FUSA and Wanamaker filed their Answer and Affirmative Defenses to AFI's Complaint. D.E. 13. On this same date, FUSA and Wanamaker filed a Counterclaim against AFI, alleging claims for: (1) fraudulent misrepresentation and omissions (Count I); (2) civil conspiracy to defraud (Count II); (3) breach of oral contract (Count

III); and (4) fraudulent inducement (Count IV). D.E. 13-1. In addition, FUSA and Wanamaker also filed a Third-Party Complaint against Palta, alleging claims for: (1) fraudulent misrepresentation and omissions (Count I); and (2) civil conspiracy to defraud (Count II). D.E. 13-2.

On November 9, 2016, AFI filed its Answer and Affirmative Defenses to the Counterclaim. D.E. 23. On November 10, 2016, Palta filed his Answer and Affirmative Defenses to the Third-Party Complaint. D.E. 24.

On December 14, 2016, the Court entered her Scheduling Order for Pretrial Conference and Trial. D.E. 25. In her Order, the Court required the parties to complete all discovery, including expert discovery, no later than May 19, 2017, and to file all dispositive motions, including *Daubert* motions, no later than June 9, 2017. *Id.*

On April 26, 2017, FUSA and Wanamaker filed their Supplemental Disclosures under Fed. R. Civ. P. 26, disclosing Jonathan Hochman ("Hochman") as an expert witness in this case (the "Supplemental Disclosure"). D.E. 46-3. These Supplemental Disclosures included, in relevant part, a brief summary of the topics on which Mr. Hochman was expected to testify. D.E. 46-3.

On May 5, 2017, FUSA and Wanamaker provided an expert report regarding Hochman (the "Original Report"). D.E. 60-1. On May 16, 2017, FUSA and Wanamaker provided a supplemental Rule 26 expert report regarding Hochman (the "Supplemental Report").[1] D.E. 60-2. On May 19, 2017, discovery closed in this case.

---

[1] Both parties agree that the Supplemental Report contains Hochman's most up-to-date expert opinions. D.E. 60 pp. 6-16; D.E. 82 pp. 6-14. Accordingly, the Court will consistently refer to the Supplemental Report throughout this Order.

On June 9, 2017, AFI and Palta moved to exclude Hochman's expert opinions under Fed. R. Evid. 702 and *Daubert*. D.E. 60. FUSA and Wanamaker oppose AFI's and Palta's *Daubert* Motion. D.E. 82.

## II.    Legal Standard

Federal Rule of Evidence 702 states: "A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case."[2]

The Supreme Court set forth the criteria for the admissibility of scientific expert testimony under Rule 702 in *Daubert* by instructing trial judges to "determine at the outset, pursuant to Rule 104(a),[3] whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue," which includes "a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and or whether that reasoning or methodology properly can be applied to the facts in issue." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592–93 (1993). In *Kumho Tire*, the Supreme Court subsequently held this standard to be applicable to all expert testimony,

---

[2] The text of Rule 702 was changed in 2011 as part of the restyling of the Evidence Rules. This change, however, did not change "any result in any ruling on evidence admissibility." Fed. R. Evid. 702 Advisory Committee's Note.

[3] Rule 104(a) provides: "The court must decide any preliminary question about whether a witness is qualified, a privilege exists, or evidence is admissible. In so deciding, the court is not bound by evidence rules, except those on privilege." This text is not the same exact text quoted in *Daubert* because Rule 104 was changed in 2011 as part of the Evidence Rules' restyling. This change was stylistic only and not intended to change "any result in any ruling on evidence admissibility." Fed. R. Evid. 104 Advisory Committee's Note.

holding that "*Daubert*'s general holding—setting forth the trial judge's general 'gatekeeping' obligation—applies not only to testimony based on 'scientific' knowledge, but also to testimony based on 'technical' and 'other specialized' knowledge." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141 (1999).

In *Rink v. Cheminova, Inc.*, the U.S. Court of Appeals for the Eleventh Circuit established a three-part test to determine whether expert testimony should be admitted under *Daubert*, explaining that all of the following elements must be established prior to the presentation of expert testimony to the jury:

> (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

400 F.3d 1286, 1291-92 (11th Cir. 2005). The party seeking to introduce expert testimony bears the burden of satisfying these criteria by a preponderance of the evidence. *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1306 (11th Cir. 1999).

With respect to the qualification of an expert, the Court of Appeals has recognized that "[w]hile scientific training or education may provide possible means to qualify, experience in a field may offer another path to expert status." *United States v. Frazier*, 387 F.3d 1244, 1261 (11th Cir. 2004). To determine whether a witness is qualified to testify as an expert regarding the matters he intends to address, this Circuit's and other Courts of Appeals have held that a witness who possesses general knowledge of a subject may qualify as an expert despite lacking specialized training or experience, so long as his testimony would likely assist a trier of fact. *See, e.g.*, *Maiz v. Virani*, 253 F.3d 641, 665 (11th Cir. 2001),

Even if a witness is qualified as an expert regarding a particular issue, the process used by the witness in forming his expert opinion must be sufficiently reliable under *Daubert* and its progeny. *See Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1342 (11th Cir. 2003) (stating that "one may be considered an expert but still offer unreliable testimony"). The Court of Appeals in *Frazier* quoted the advisory committee's note to the 2000 amendments of Rule 702, which explains that "[i]f the witness is relying solely or primarily on experience, then the witness must explain *how* that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts. The trial court's gatekeeping function requires more than simply 'taking the expert's word for it.'" *Frazier*, 387 F.3d at 1261 (quoting Fed. R. Evid. 702 advisory committee's note (2000 amends.)). Thus, the *Frazier* court observed, "it remains a basic foundation for admissibility that "[p]roposed [expert] testimony must be supported by appropriate validation—i.e., 'good grounds,' based on what is known." *Id.* (quoting *Daubert*, 509 U.S. at 590).

The final requirement for admissibility of expert testimony is that it "assist the trier of fact." *Frazier*, 387 F.3d at 1244. In other words, "expert testimony is admissible if it concerns matters that are beyond the understanding of the average lay person." *Id.* (citing *United States v. Reno*, 765 F.2d 983, 995 (11th Cir. 1985)). Expert testimony "is properly excluded when it is not needed to clarify facts and issues of common understanding which jurors are able to comprehend for themselves." *Hibiscus Assocs. Ltd. v. Bd. of Trs. of Policemen & Firemen Ret. Sys.*, 50 F.3d 908, 917 (11th Cir. 1995) (citations omitted).

III.   **Discussion**

The Court will address each of the twelve categories of testimony included in Hochman's Supplemental Report[4] that AFI and Palta move to exclude under Fed. R. Evid. 702 and, then, address any additional opinions in Hochman's expert reports that should be excluded under Rule 702 and *Daubert*. For reasons set forth below, Hochman's expert opinions will not be considered on summary judgment and Hochman will not be permitted to testify as an expert at trial.

A.   Hochman's Expert Opinions Concerning Affiliate Fraud and Payment Card Fraud (Paragraph 1)

In Paragraph 1 of the Supplemental Report, Hochman offers opinions concerning both affiliate fraud and payment card fraud. D.E. 60-2 pp. 8-9. AFI and Palta argue that Hochman's opinions in Paragraph 1 should be excluded under *Daubert* because: (1) Hochman offers a general definition of "payment card fraud" by relying on an online blog post, which Hochman does not show to be reliable; and (2) Hochman's opinions concerning both affiliate fraud and payment card fraud are irrelevant to this action and would not assist the trier of fact, as "[n]either the Defendants' Counterclaim nor the Third-Party Complaint raised issues of payment card fraud, and there is no evidence of the same" and, in any event, the terms of the I/O and Terms and Conditions exclude AFI from liability for any payment card fraud. D.E. 60 pp. 6-7.

FUSA and Wanamaker argue that Hochman's opinions in Paragraph 1 are admissible under *Daubert* for three reasons. First, according to FUSA and Wanamaker, the blog relied on by Hochman is a "reliable source of information." D.E. 82 pp. 6-7. Second, FUSA and Wanamaker contend that Hochman's experience in the fields of computer science, online marketing, website development and e-commerce, standing alone, renders his opinions reliable. *Id.* Lastly, FUSA

---

[4] In instant briefing, the parties do not rely on, and have not filed, any deposition testimony or other summaries of Hochman's expert opinions, besides the Original Report and Supplemental Report.

and Wanamaker contend that payment card fraud *could* be relevant to FUSA's and Wanamaker's allegations that customers cancelled or returned FUSA's fitness supplements, resulting in FUSA voiding orders and suffering damages. *Id.*

The Court will exclude Hochman's opinions concerning affiliate and payment card fraud, which are contained in Paragraph 1 of the Supplemental Report, for three reasons. First, as an initial matter, Hochman does not indicate, in any way, that his opinions are supported by reliable sources or sources that are accepted within the industry. D.E. 60-2 pp. 8-9; *Grupo Televisa, S.A. v. Telemundo Commc'ns Grp., Inc.*, No. 04-20073-CIV, 2005 WL 5955701, at *5 (S.D. Fla. Aug. 17, 2005) (excluding expert opinion where website was deemed to be an "unreliable source of information").

Second, Hochman's opinions concerning affiliate and payment card fraud are wholly unreliable, as Hochman improperly relies solely on his professional experience in online marketing to opine, in relevant part, that: (1) payment card fraud can be "blended with a stream of legitimate transactions making detection more difficult;" (2) "an Affiliati publisher appears to have created a page that imitates ESPN . . . result[ing] in unhappy customers, higher rates of return, offline and online complaints, and chargebacks;" and (3) fraud "causes merchant[s] to lose money, while the affiliate network profits." D.E. 60-2 pp. 8-9. But Hochman does not explain "*how* that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, [or] how that experience is reliably applied to the facts," and the Court cannot simply "tak[e] [Hochman's] word for it." *Frazier*, 387 F.3d at 1261 ("The trial court's gatekeeping function requires more than simply 'taking the expert's word for it.'"); *Padgett v. Kmart Corp.*, No. CV 315-048, 2016 WL 3746671, at *4 (S.D. Ga. July 8, 2016) ("A district court must do more than 'take the expert's word for it' . . . because *Daubert* requires trial courts

8

to act as gatekeepers to ensure that speculative and unreliable testimony does not reach the jury (quoting *Green v. Five Star Mfg., Inc.*, No. 2:14-CV-00449-SGC, 2016 WL 1243757, at *6 (N.D. Ala. Mar. 30, 2016)); *Graff v. Baja Marine Corp.*, No. CIV.A. 2:06-CV-68-WC, 2007 WL 6900363, at *5 (N.D. Ga. Dec. 21, 2007), *aff'd*, 310 F. App'x 298 (11th Cir. 2009) ("Rampolla's unsupported opinion is insufficient; the court cannot simply take his word for it.").

Lastly, in any event, Hochman's opinions concerning affiliate and payment card fraud are not useful to the trier of fact because these opinions involve no "scientific, technical, or other specialized knowledge . . . beyond the understanding and experience of the average citizen." *Toler v. Engelhard Corp.*, No. 5:04-CV45DF, 2006 WL 753177, at *10 (M.D. Ga. Mar. 20, 2006), *on reconsideration in part sub nom. Toler v. Engelhard Corp*, No. 5:04-CV-45 (DF), 2006 WL 1133040 (M.D. Ga. Apr. 27, 2006) (excluding testimony that involved no "scientific, technical, or other specialized knowledge" and offered nothing "beyond the understanding and experience of the average citizen.").

B. <u>Hochman's Additional Expert Opinions Concerning Other Evidence of Payment Card Fraud (Paragraph 2)</u>

In Paragraph 2 of the Supplemental Report, Hochman states:

> a. I understand that Fitcrew staff have received calls indicating numerous sales made to women who claim to have never ordered the product. Because the product is exclusively targeted at men, sales to women are likely to be affiliate fraud.
>
> b. I understand that Fitcrew staff have received numerous calls from customers claiming to have never purchased the product, nor the free trial.

D.E. 60-2 p. 9. AFI and Palta do not expressly move to preclude Hochman from testifying as to these two statements. D.E. 60.

However, the Court will not permit Hochman to testify to the statements contained in Paragraphs 2(a) and 2(b) because: (1) Hochman does not explain, in any way, the basis for his

opinions concerning why "sales to women are likely to be affiliate fraud;" and (2) the remainder of Hochman's statements in this Paragraph are statements of fact, rather than expert opinions, which are not useful to the trier of fact. *Frazier*, 387 F.3d at 1261; *Padgett*, No. CV 315-048, 2016 WL 3746671, at *4; *Graff*, No. CIV.A. 2:06-CV-68-WC, 2007 WL 6900363, at *5, *aff'd*, 310 F. App'x 298; *In re Traysol Prod. Liab. Litig.*, 709 F. Supp. 2d 1323, 1338 (S.D. Fla. 2010) (excluding expert opinion that "merely restates [information in] an email" exchanged during discovery").

  C.  <u>Hochman's Expert Opinions Concerning Evidence of Fraud or Unethical Marketing Practices (Paragraphs 3 and 9)</u>

  In Paragraphs 3 and 9 of the Supplemental Report, Hochman offers the following expert opinions: (1) AFI had a "duty to prevent abusive marketing practices by publishers;" (2) "[o]ne or more Affiliati publishers, such as publisher 2106, engaged in unethical marketing, false endorsements, deceptive marketing web pages, trademark misuse, fake news and/or cybersquatting;" (3) AFI was "in a position to know the addresses of publisher's web pages originating web traffic and verify them for compliance with ethical marketing practice;" (4) "Palta directed CodeClouds, the web developer hired by Fitcrew to maintain Fitcrew's website, to hide the terms and conditions on the landing page;" and (5) AFI "appears to have turned a blind eye to affiliate fraud, perhaps because enforcement would have lowered Affiliati's earnings . . . [but AFI] should have proactively detected and eliminated fraud from its network." D.E. 60-2 p. 9.

  AFI and Palta argue that these four opinions should be excluded because: (1) Hochman's opinions are unreliable, as he "does not identify any published literature to support his opinion that these alleged duties exist other than his blanket assertions, and ignores the terms of the

parties' Agreement;" and (2) Hochman's opinions concerning AFI's duties are impermissible legal conclusions. D.E. 60 pp. 12-13.

In response, FUSA and Wanamaker argue that Hochman properly relies on his "years of experience in the industry" to opine on whether AFI and Palta "acted in compliance with industry standards." D.E. 82 pp. 10-11.

The Court agrees with AFI and Palta. First, once again, Hochman relies solely on his experience to contend that AFI had a duty to prevent affiliate fraud, failed to prevent this fraud, and, in fact, participated in this fraud, without explaining how Hochman's experience leads to his conclusions, why his experience is a sufficient basis for his opinion, or how his experience is reliably applied to the facts. *Frazier*, 387 F.3d at 1261. Hochman's conclusory opinions are, without question, unreliable under *Daubert*. *Id.*; *Padgett*, No. CV 315-048, 2016 WL 3746671, at *4; *Graff*, No. CIV.A. 2:06-CV-68-WC, 2007 WL 6900363, at *5, *aff'd*, 310 F. App'x 298.

In addition, Hochman's opinions concerning the role of an affiliate network to "police its participating publishers" are not useful to the trier of fact because these opinions involve no "scientific, technical, or other specialized knowledge . . . beyond the understanding and experience of the average citizen." *See Toler*, No. 5:04-CV45DF, 2006 WL 753177, at *10 (excluding testimony that involved no "scientific, technical, or other specialized knowledge" and offered nothing "beyond the understanding and experience of the average citizen."); *Hibiscus Assoc. Ltd.*, 50 F.3d at 917.

D.  Hochman's Calculations of FUSA's Losses from Excessive Chargebacks (Paragraph 4)

In Paragraph 4 of the Supplemental Report, Hochman provides calculations concerning FUSA's alleged losses due to chargebacks, which FUSA and Wanamaker contend were caused by AFI's and Palta's actions. D.E. 60-2 pp. 9-10. Hochman arrived at his calculations by

dividing the number of chargebacks by the revenue on sales generated by AFI and, then, comparing these figures to chargebacks and revenue figures of other affiliate websites. *See id.*

AFI and Palta argue that Hochman's calculations should be excluded because: (1) Hochman did not "include any sources or support to establish the reliability of Hochman's methodology of comparing the chargeback rates by units sold or by revenue sales generated for two different affiliate networks;" (2) Hochman did not proffer that these calculations are accepted in the industry; and (3) Hochman fails to explain why he used figures from June 2016 through December 2016, when FUSA and Wanamaker concede that AFI provided services for a shorter time period, from June 2016 through September 2016. D.E. 60 pp. 7-9.

In response, FUSA and Wanamaker argue, in relevant part, that Hochman's methodology is reliable because, according to FUSA and Wanamaker, "it is common practice in the Internet marketing industry to compare a new marketing tactic (known as the 'test') against an old marketing tactic (known as the 'control') to determine the difference between the two." D.E. 82 p. 7. In addition, FUSA and Wanamaker argue that AFI's and Palta's arguments concerning the relevant time period for Hochman's calculations go to the weight of Hochman's testimony, rather than its admissibility, which is more properly attacked by cross-examination. *Id.*

The Court agrees that Hochman's calculations concerning FUSA's alleged losses due to chargebacks fail to satisfy the reliability requirements of *Daubert*. "*Daubert* lists the following relevant considerations to determine whether the methodology whereby an expert has reached an economic conclusion is sufficiently reliable: (1) whether the theory or technique has been subjected to peer review and publication; (2) the rate of error; and (3) whether the methodology has been generally accepted." *Grupo Televisa, S.A.*, 2005 WL 5955701, at *3. The party offering an expert bears the burden of "laying the proper foundation for the admission of expert

testimony" and showing, by a preponderance of the evidence, that this testimony is reliable. *McCorvey v. Baxter Healthcare Corp.*, 298 F.3d 1253, 1256 (11th Cir. 2002).

Here, there is no indication that Hochman's methodology "has been subjected to peer review and publication," there is no description of any rate of error of Hochman's calculations and, perhaps most importantly, Hochman does not explain whether or why his methodology is generally accepted in the industry. D.E. 60-2 pp. 9-10; *Grupo Televisa, S.A.*, 2005 WL 5955701, at *3. Instead, FUSA and Wanamaker only state, in conclusory fashion, that Hochman's calculations are based on a "common practice." D.E. 82 p. 8. This is nowhere near enough to show, by a preponderance of the evidence, that Hochman's calculations are reliable under *Daubert. See, e.g.*, *McCorvey*, 298 F.3d at 1257 (affirming district court's exclusion of expert testimony under *Daubert* where the expert failed to show that his "methodology . . . is sufficient reliable"); *Fiveash v. Allstate Ins. Co.*, No. , 2013 WL 13097615, at *3 (N.D. Ga. Aug. 1, 2013) ("After careful consideration, the Court finds that Grandchamp failed to provide adequate explanation of how he determined the replacement cost of the Fiveashes' personal property. Grandchamp claims that his methodology was consistent with standard practices in the public-adjuster industry, but he fails to provide any type of support for his assertion." (citing *Cook ex rel. Estate of Tessier v. Sheriff of Monroe Cnty., Fla.*, 402 F.3d 1092, 1113 (11th Cir. 2005))).

E.   Hochman's Expert Opinions Concerning Defective Internet Traffic (Paragraph 5)

In Paragraph 5 of the Supplemental Report, Hochman opines, in principal part, that "Affiliati Network's traffic was evidently defective because the chargeback rate was more than three times what would be expected," that the "traffic was tainted with fraudulent representations to customers by Affiliati's publishers, and [that] Affiliati had doctored the Fitcrew landing page to increase sales by hiding the terms of sale." D.E. 60-2 p. 10.

While AFI and Palta do not expressly move to preclude Hochman from testifying that AFI Network's traffic was defective, the Court finds that Hochman's opinions in Paragraph 5 should be excluded for two reasons. First, Hochman offers conclusory opinions based solely on his experience, without explaining "*how* that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, [or] how that experience is reliably applied to the facts." *Frazier*, 387 F.3d at 1261; *Padgett*, No. CV 315-048, 2016 WL 3746671, at *4; *Graff*, No. CIV.A. 2:06-CV-68-WC, 2007 WL 6900363, at *5, *aff'd*, 310 F. App'x 298; *Jones v. Novartis Pharm. Corp.*, 2017 WL 372246, at *26 (N.D. Ala. Jan. 26, 2017) ("Expert reports must include both 'how' and 'why' the expert reached a certain result, not just conclusory opinions."); *Islamic Center of North Fulton, Inc. v. City of Alpharetta, Ga.*, No. 1:10-cv-01922-JOF, 2011 WL 6140662, at *3 (N.D. Ga. Nov. 10, 2011) ("Defendants essentially argue that this court should allow Ellis's report and testimony based solely on his 'extensive qualifications and experience as an engineer.' And in his expert report, Ellis merely refers to his 'investigation and review of the documents listed above' as the basis for his opinions. Qualification and experience alone, however, are insufficient to render an expert's opinions reliable.").

Second, because the opinions contained in Paragraph 5 of Hochman's Supplement Report are "speculative" and "not based on reliable methodology," Hochman's proffered testimony "consists of conclusory opinions that would not be helpful to the jury." *See, e.g.*, *In re Scientific-Atlanta Inc. Securities Litig.*, No. 1:01-CV-1950-RWS, 2009 WL 4281256, at * 2 (N.D. Ga. Nov. 24, 2009).

F.   Hochman's Expert Opinions Concerning Delay in Identifying Affiliate Fraud (Paragraph 6)

In Paragraph 6 of the Supplemental Report, Hochman offers opinions concerning why a website might experience a delay in discovering affiliate fraud. D.E. 60-2 p. 10. In particular,

Hochman opines that a customer who has been a victim of affiliate fraud may seek to be reimbursed for fraud, but that it could take a supplier, such as FUSA, or a customer, such as purchasers of FUSA's fitness supplements, months to become aware of the fraud due to a lag between posting credit card charges and conclusion of the dispute resolution process between credit card users and payment card providers. *Id.*

AFI and Palta argue that these opinions should be excluded because it is "common knowledge for any person who has a credit or debit card or knows someone who does that there is a lag time between a charge being incurred and the customer's receipt of a statement reflecting the charge." D.E. 60 p. 10. In other words, this is simply not the type of issue that requires expert testimony. *Id.*

In response, FUSA and Wanamaker argue, in conclusory fashion, that "Mr. Hochman's opinions on these subjects are not only helpful, but necessary, in order for the trier of fact to understand any perceived delays in FITCREW's ability to timely identify affiliate fraud." D.E. 82 p. 9.

The Court concludes that Hochman's opinions in Paragraph 5 of the Supplemental Report should be excluded, as these opinions do not involve "scientific, technical, or other specialized knowledge . . . [which is] beyond the understanding and experience of the average citizen." *Toler*, No. 5:04-CV45DF, 2006 WL 753177, at \*10, *on reconsideration in part sub nom. Toler*, No. 5:04-CV-45 (DF), 2006 WL 1133040; *Hibiscus Assoc. Ltd.*, 50 F.3d at 917 ("Expert testimony is properly excluded when it is not needed to clarify facts and issues of common understanding which jurors are able to comprehend for themselves."); *Whelan v. Royal Caribbean Cruises, Ltd.*, 976 F. Supp. 2d 1322, 1327 (S.D. Fla. 2013).

G.  Hochman's Expert Opinions Concerning the Effects of Affiliati Removing Terms of
    Sale (Paragraph 7)

In Paragraph 7 of the Supplemental Report, Hochman states:

    a.  Sonny Palta went behind Wanamaker's back to have Fitcrew's Terms of Sale
        removed from the initial landing page to increase sales, and thus, his earnings.
        This action also increased complaints, returns and chargebacks, and damaged
        Fitcrew's reputation.

    b.  Sonny Palta's action was unethical, and not something that an affiliate
        network is normally asked or allowed to do.

D.E. 60-2 pp. 10-11.

    While AFI and Palta do not expressly move to preclude Hochman from testifying
concerning his opinions in Paragraph 7, the Court concludes that these opinions are inadmissible.
Here, Hochman offers conclusory opinions concerning, among other things, whether Palta "went
behind Wanamaker's back," whether changing the terms of sale "increased complaints, returns
and chargebacks, and damaged Fitcrew's reputation," and whether Palta's actions were
"unethical." *Id.* These opinions are plainly inadmissible for two reasons. First, Hochman fails to
explain why his experience allows him to reach his opinions, "*how* that experience leads to the
conclusion reached . . . [or] how that experience is reliably applied to the facts." *Frazier*, 387
F.3d at 1261; *Padgett*, No. CV 315-048, 2016 WL 3746671, at *4; *Graff*, No. CIV.A. 2:06-CV-
68-WC, 2007 WL 6900363, at *5, *aff'd*, 310 F. App'x 298.

    Second, Hochman opines that Palta "went behind Wanamaker's back" in an "unethical"
way. D.E. 60-2 pp. 10-11. These opinions are wholly improper expert testimony as it is, in effect,
an opinion as to the "truthfulness or credibility" of Palta's testimony that, among other things,
FUSA "review[ed] and sign[ed] off" on all changes to the "websites that [AFI] had actually live
traffic currently running to." In other words, these opinions are inadmissible because the
opinions "invade[] the jury's province to make credibility determinations." D.E. 59-3 at 160:1-

16

21; *United States v. Beasley*, 72 F.3d 1518, 1528 (11th Cir. 1996); *Daubert*. *Pellegrino v. Wengert*, No. 15-CV-60535, 2016 WL 3678600, at *9 (S.D. Fla. July 12, 2016) (excluding expert testimony concerning the "credibility of the other witnesses" because such testimony is "not permitted"); *Lohr v. Zehner*, No. 2:12CV533-MHT, 2014 WL 3175445, at *2 (M.D. Ala. July 8, 2014) (finding "credibility determination [was] not sufficiently reliable to go before a jury as expert opinion"); *United States v. Falcon*, 245 F. Supp. 2d 1239, 1248 (S.D. Fla. 2003) ("Permitting Dr. Poliacoff's testimony would run contrary, to the well-established principle that, absent extraordinary circumstances, credibility determinations are for the jury, and not expert witnesses.").

H.  Hochman's Expert Opinions Concerning Damage to Fitcrew's Reputation (Paragraph 8)

In Paragraph 8 of the Supplemental Report, Hochman opines that AFI and AFI's affiliates damaged FUSA's reputation. In support, Hochman relies entirely on his review of the Better Business Bureau's website and a website called "#REPORTSCAM," which includes "23 complaints about Fitcrew." D.E. 60-2 p. 11. According to Hochman, these websites demonstrate that FUSA's reputation was harmed by AFI's and AFI's affiliates' actions because: (1) FUSA's BBB rating decreased after individuals filed "22 complaints" that Hochman believes to be "directly a result of Affiliati's shady marketing practices;" and (2) "[a]t least 20" of the 23 complaints on #REPORTSCAM were posted during the same time period that AFI and its affiliates advertised FUSA's products. *Id.*

AFI and Palta argue that Hochman's expert opinions concerning damage to FUSA's reputation are inadmissible under *Daubert* for two reasons. First, AFI and Palta argue that Hochman's opinions are unreliable because Hochman "does not establish the reliability of the ratings systems nor the reviews on the websites to form his opinions." D.E. 60 p. 11. In other

words, Hochman's analysis does not indicate that he verified the authenticity of each, or any, user complaint to ensure that an actual consumer generated it. *Id.*

Second, AFI and Palta argue that Hochman's report: (1) does not account for complaints that pre-date AFI's involvement; (2) does not explain why Hochman concluded that AFI and its affiliates damaged FUSA's reputation; and (3) relies solely on a temporal relationship between the comments and AFI's campaign to conclude, without explanation, that AFI's actions damaged FUSA's reputation. *Id.* p. 12.

In response, FUSA and Wanamaker contend, without support, that: (1) complaints on the BBB and #REPORTSCAM are reliable; (2) it is "commonly understood in the field of online reputation management . . . that any web page appearing on the first page of a popular search engine . . . will impact a business' reputation;" and (3) it is also "commonly understood in [the] industry" that a "temporal relationship between a marketing activity and reviews received" constitutes a "cause and effect" relationship. D.E. 82 pp. 9-10.

Hochman's expert opinions concerning damage to FitCrew's reputation are inadmissible under *Daubert* for two main reasons. First, Hochman fails to proffer any information whatsoever to indicate that the BBB or #REPORTSCAM websites constitute reliable sources to support Hochman's opinions. In other words, Hochman relies entirely on anecdotal complaints by anonymous sources, without verifying, or attempting to verify, the authenticity of any of the ratings or reviews on these two websites, which is unacceptable under *Daubert*. *McClain v. Metabolife Int'l, Inc.*, 401 F.3d 1233, 1250 (11th Cir. 2005) ("Uncontrolled anecdotal information offers one of the least reliable sources to justify opinions about both general and individual causation."); *Grupo Televisa, S.A.*, No. 04-20073-CIV, 2005 WL 5955701, at *5.

Second, Hochman fails to offer any analysis to support his conclusion that AFI's or Palta's actions caused damage to FUSA's reputation. Instead, Hochman simply assumes that **any** complaints lodged during the time period of AFI's marketing campaign were the result of AFI's marketing scheme. Hochman's expert opinions are complete speculation, which is wholly unreliable and, as such, inadmissible under *Daubert. McClain*, 401 F.3d at 1250; *Padgett*, No. CV 315-048, 2016 WL 3746671, at *4 ("*Daubert* requires trial courts to act as gatekeepers to ensure that speculative and unreliable testimony does not reach the jury); *Graff*, No. CIV.A. 2:06-CV-68-WC, 2007 WL 6900363, at *5 (N.D. Ga. Dec. 21, 2007), *aff'd*, 310 F. App'x 298 (11th Cir. 2009) ("Rampolla's unsupported opinion is insufficient; the court cannot simply take his word for it.").

I.  Hochman's Expert Opinions Concerning AFI's Over Delivery of Media (Paragraph 10)

In Paragraph 10 of the Supplemental Report, Hochman opines, in relevant part, that "Afiiliati appears to have delivered and billed approximately $1.3 million more for sales referrals than the quantity ordered by Fitcrew," which is "unusual and unacceptable" in the industry. D.E. 60-2 p. 11.

While AFI and Palta do not expressly move to exclude Hochman's expert opinions contained in Paragraph 10, the Court finds that these opinions should be excluded for two reasons. First, Hochman, once again, offers conclusory opinions concerning AFI's overcharges and industry practices, based solely on his experience, without explaining "*how* that experience leads to the conclusion reached, *why* that experience is a sufficient basis for the opinion, [or] *how* that experience is reliably applied to the facts." *Frazier*, 387 F.3d at 1261; *Padgett*, No. CV 315-048, 2016 WL 3746671, at *4; *Graff*, No. CIV.A. 2:06-CV-68-WC, 2007 WL 6900363, at

*5, *aff'd*, 310 F. App'x 298; *Jones*, 2017 WL 372246, at *26; *Islamic Center of North Fulton, Inc.*, No. 1:10-cv-01922-JOF, 2011 WL 6140662, at *3.

In addition, because the opinions contained in Paragraph 10 of Hochman's Supplement Report are "speculative" and "not based on reliable methodology," Hochman's proffered testimony "consists of conclusory opinions that would not be helpful to the jury." *See, e.g.*, *In re Scientific-Atlanta Inc. Securities Litig.*, No. 1:01-CV-1950-RWS, 2009 WL 4281256, at * 2 (N.D. Ga. Nov. 24, 2009).

J. Hochman's Expert Opinions Concerning the Nature of PDF Documents and Electronic Signatures (Paragraph 11)

In Paragraph 11 of the Supplemental Report, Hochman offers opinions concerning whether PDF documents can be edited or digitally signed, to support FUSA's and Wanamaker's contention, which they have since abandoned, that FUSA did not electronically sign the I/O or Terms and Conditions. D.E. 60-2 p. 12.

AFI and Palta argue that the opinions in Paragraph 11 are inadmissible for two reasons. First, AFI and Palta argue that because FUSA and Wanamaker now concede that they signed the I/O and Terms and Conditions, Hochman's opinions concerning PDF documents are irrelevant and would not assist the trier of fact. D.E. 60 p. 13. Second, AFI and Palta argue that "given the prevalence of PDF document and their general usage, it is inappropriate for Hochman to offer testimony on same." *Id.* p. 14.

In response, FUSA and Wanamaker agree that because "Naud conceded to electronically signing the Agreement [at issue in this case] using Adobe Sign . . . any expert testimony about how Adobe Sign works are no longer relevant to this issue." D.E. 82. p. 11. Thus, FUSA and Wanamaker seek only to "reserve[] the right to proffer Mr. Hochman's expert opinions on how Adobe PDF works, if necessary, for purposes of rebuttal." *Id.*

Hochman's opinions concerning Adobe PDF documents and electronic signatures are inadmissible, as: (1) these opinions are plainly irrelevant, as FUSA and Wanamaker concede that Naud, acting on FUSA's behalf, executed the I/O and Terms and Conditions; and (2) in any event, Hochman's opinions concerning Adobe PDF documents do not pertain to "scientific, technical, or other specialized knowledge . . . [which is] beyond the understanding and experience of the average citizen." *Toler*, No. 5:04-CV45DF, 2006 WL 753177, at *10, *on reconsideration in part sub nom. Toler*, No. 5:04-CV-45 (DF), 2006 WL 1133040 (; *Hibiscus Assoc. Ltd.*, 50 F.3d at 917 ("Expert testimony is properly excluded when it is not needed to clarify facts and issues of common understanding which jurors are able to comprehend for themselves."); *Whelan*, 976 F. Supp. 2d at 1327.

K.  <u>Hochman's Expert Opinions Concerning the Terms of the I/O and Terms and Conditions (Paragraph 12)</u>

In Paragraph 12 of the Supplemental Report, Hochman analyzes the I/O and Terms and Conditions and, then, offers opinions on whether these terms are customarily used in the industry. D.E. 60-2 p. 12.

AFI and Palta argue that Hochman's opinions concerning the I/O and Terms and Conditions should be excluded because Hochman: (1) fails to identify any source or support for his opinion other than his experience; and (2) does not explain how his experience leads to his conclusions, why his experience is a sufficient basis for his opinions, and how his experience can reliably be applied to the facts. D.E. 60 p. 14.

In response, FUSA and Wanamaker contend that Hochman can offer opinions concerning certain terms in the I/O and Terms and Conditions based entirely on "his fifteen years' experience," without explaining why his experience renders his opinion reliable. D.E. 82 pp. 11-12.

Hochman's opinions set forth in Paragraph 12 are plainly inadmissible under *Daubert*, as Hochman, once again, relies entirely on his professional experience without explaining "*how* that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, [or] how that experience is reliably applied to the facts." *Frazier*, 387 F.3d at 1261 ("The trial court's gatekeeping function requires more than simply 'taking the expert's word for it.'"); *Padgett*, No. CV 315-048, 2016 WL 3746671, at *4; *Graff*, No. CIV.A. 2:06-CV-68-WC, 2007 WL 6900363, , *aff'd*, 310 F. App'x 298 (11th Cir. 2009). Thus, Hochman's opinions in Paragraph 12 are unreliable because Hochman, in essence, simply asks the Court to "take [his] word for it" that the terms in the I/O and Terms and Conditions are "unusual." *See* D.E. 60-2 p. 12; *Frazier*, 387 F.3d at 1261.

L. Hochman's Expert Opinions Concerning How FUSA Conducts E-Commerce (Paragraph 13)

In Paragraph 13 of the Supplemental Report, Hochman describes the different customer relationship management systems that FUSA uses to track sales and customer information. D.E. 60-2 p. 13. AFI and Palta argue that Hochman's opinions concerning FUSA's customer relationship management systems should be excluded because these opinions: (1) recount facts from discovery and depositions, which are more appropriately addressed by exhibits and lay witness testimony, including testimony from FUSA's officers and directors with first-hand knowledge of FUSA's operations; and (2) are not useful to the trier of fact. D.E. 60 p. 15.

In response, FUSA and Wanamaker state that that Hochman's opinions concerning FUSA's customer relationship management systems "were initially provided because Affiliati had disputed certain facts related to chargeback processing by pointing out discrepancies between Midigator, FITCREW's chargeback mitigation company, and Konnectiv, a competing mitigation company," but that AFI's own expert has since acknowledged that Midigator is the

"best source of chargeback data." D.E. 82. P. 12. Thus, FUSA and Wanamaker represent that Hochman need not offer the expert opinions set forth in Paragraph 13, unless AFI "continues to dispute Midigator's data as compared to Konnectiv's." *Id.*

There is no question that Hochman's opinions concerning FUSA's customer relationship management systems merely recount facts that can be proven with lay witness testimony from FUSA's own officers and directors with first-hand knowledge of FUSA operations and that, therefore, the proposed expert testimony would be cumulative and not of assistance to the trier of fact. *See Toler*, No. 5:04-CV45DF, 2006 WL 753177, at *10, *on reconsideration in part sub nom. Toler*, No. 5:04-CV-45 (DF), 2006 WL 1133040 (requiring that expert testimony pertain to "scientific, technical or other specialized knowledge . . . beyond the understanding and experience of the average citizen); *see also Hibiscus Assoc. Ltd.*, 50 F.3d at 917 (same); *see also Whelan*, 976 F. Supp. 2d at 1327 (same). Thus, Hochman's opinions set forth in Paragraph 13 are inadmissible under *Daubert*.

**IV.**   <u>**Conclusion**</u>

For reasons set forth above, every expert opinion set forth in Hochman's expert reports, D.E. 60-1 and D.E. 60-2, are properly excluded under Fed. R. Civ. 702 and *Daubert*. Accordingly, it is

ORDERED AND ADJUDGED that the Motion, D.E. 60, is GRANTED. Hochman's expert opinions will not be considered on summary judgment, and Hochman will be precluded from offering expert testimony at trial.

DONE AND ORDERED in Chambers, Miami, Florida, this __14th__ day of August, 2017.

_____
URSULA UNGARO
UNITED STATES DISTRICT JUDGE

copies provided: counsel of record